IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| ROBERT TEDESCHI<br>54379 Church Road<br>Callahan, Florida 32011<br><br>and<br><br>REBECCA TEDESCHI<br>54379 Church Road<br>Callahan, Florida 32011<br><br>   Plaintiffs<br><br>v.<br><br>CAROLE TEDESCHI<br>4757 East Greenway Road, Suite 107B, #291<br>Phoenix, Arizona 85032<br><br>   Defendant | Case No. _____ |

## COMPLAINT

The Plaintiffs, Robert Tedeschi and Rebecca Tedeschi, by and through their undersigned counsel, sue the Defendant, Carole Tedeschi, and say:

### Summary of the Case

The Parties entered a settlement agreement on August 31, 2017 to resolve a separate lawsuit. The settlement agreement called for the Plaintiffs to convey real property located in Brantley County, Georgia to the Defendant. However, the Parties disagree as to the real property to be conveyed. The Plaintiffs remain committed to honoring the settlement agreement, but seek a declaration by this Court as to the identity of the real property to be conveyed.

### Parties and Jurisdiction

1. Plaintiff, Robert Tedeschi, is an adult citizen of the State of Florida, and a resident of Nassau County. Mr. Tedeschi is the husband of the Plaintiff, Rebecca Tedeschi.

2. Plaintiff, Rebecca Tedeschi, is an adult citizen of the State of Florida, and a resident of Nassau County.  Mrs. Tedeschi is the wife of the Plaintiff, Robert Tedeschi.

3. Defendant, Carole Tedeschi, is an adult citizen of the State of Phoenix, and a resident of Maricopa County.  Ms. Tedeschi is the sister of the Plaintiff, Robert Tedeschi.

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1).  There is complete diversity of citizenship.  The real property in dispute is worth in excess of seventy-five thousand dollars ($75,000).

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

## Facts Common to All Counts

### The Land Records

6. On October 18, 2006, the Plaintiffs purchased a 194-acre parcel of land in Brantley County, Georgia (the "First Property").  A copy of the deed to the First Property is attached as Exhibit A.

7. On January 23, 2007, the Plaintiffs sold the First Property.  A copy of the Brantley County tax records showing the sale is attached as Exhibit B.

8. On March 16, 2007, the Plaintiffs purchased a 274-acre parcel of land in Brantley County, Georgia (the "Second Property").  The Second Property is actually comprised of two separate tracts of land, which add to a total of 274 acres. A copy of the deed to the Second Property is attached as Exhibit C.

### The Procedural History

9. On December 16, 2016, Defendant filed a complaint against the Defendants in the Circuit Court for Carroll County, Maryland in a case styled <u>Carole Tedeschi v. Robert Tedeschi, et ux.</u> Case No. 06-C-16-072621 (the "State Court Action").

10. The State Court Action sought damages stemming from a dispute relating to ownership of the First Property and the Second Property. The Plaintiffs had been divested of title to the First Property for nearly ten (10) years before the filing of the State Court Action.

11. On January 26, 2017, Plaintiffs filed a Notice of Removal, pursuant to 28 U.S.C. § 1446, in the State Court Action. As a consequence, the State Court Action was removed to the United States District Court for the District of Maryland (Baltimore Division), in a case styled <u>Carole Tedeschi v. Robert Tedeschi, *et ux.*</u>, Case No. 1:17-cv-00223-ADC (the "Federal Court Action").

12. During the Federal Court Action, the Parties exchanged written discovery, which included the exchange of documents. Only one deed was exchanged during discovery – the deed to the Second Property.

13. On August 31, 2017, a settlement conference was held before Magistrate Judge Jillyn K. Schulze in the Federal Court Action. At the settlement conference, the Parties never referred to individual lots of land. Instead, the land was generically referred to as the "Georgia tree farm." Plaintiffs understood this term to mean the Second Property, as it was the only land they owned in Georgia, and thus the only land they were capable of conveying.

14. At the settlement conference, the Parties reached an oral agreement which called for:

   A. the Plaintiffs to convey the Georgia tree farm to the Defendant, at the Defendant's costs and expense;

   B. The Parties to execute mutual waivers and releases for all claim that were asserted in the Federal Court Action, or which could have been asserted in the Federal Court Action; and

   C. The Plaintiffs would pay taxes on the Georgia tree farm through January 1, 2018.

15. The same day, Magistrate Judge A. David Copperthite issued an order dismissing the Federal Court Action "without prejudice to the right of a party to move for good cause within 30 days to reopen this action if settlement is not consummated. If no party moves to reopen, the dismissal shall be with prejudice." A copy of that order is attached as Exhibit D.

16. After returning to his office from the settlement conference,[1] Plaintiffs' counsel sent an email to Defendant's counsel confirming the operative terms of the settlement agreement. A copy of that email is attached as Exhibit E. There was no response to that email.

17. On September 20, 2017, Plaintiffs' counsel emailed Defendant's counsel to confirm the nomenclature to describe the land to be conveyed. Included as an attachment to that email was the deed to the Second Property – which was the only deed which had been produced in discovery. A copy of that email and its attachments are attached collectively as Exhibit F. There was no response to that email.

18. On October 13, 2017, Plaintiffs' counsel shared a draft of a settlement agreement which called for a single parcel of land to be conveyed.

19. On December 18, 2018, Defendant's counsel emailed Plaintiffs' counsel contending that the draft agreement was under-inclusive, and that the land to be conveyed was described in the Complaint filed in the State Court Action.

20. On January 15, 2018, Plaintiffs' counsel responded, stating in operative part:

> The complaint described 800 acres . . . I shared a copy of the only deed which has been shared – and the only one known to my client to exist . . . I share that deed again here. You will see that the deed describes ~274 acres of land. If you believe there is additional land, please share the instrument describing it.

---

[1] Although the Federal Court Action was filed in the Baltimore Division, the settlement conference was held at the Greenbelt Division. Plaintiffs' counsel's office is in Baltimore City. Due to traffic between Greenbelt and Baltimore at evening rush-hour, the email was not sent until later in the evening.

21. On January 26, 2018, Defendant's counsel shared two deeds by email. One was the deed to the Second Property, which was known to Plaintiffs' counsel. The other was new, and had not been produced in discovery – it was the deed to the First Property, which did not accurately describe the status of title. In fact, the Plaintiffs had been divested of title for nearly 10 years prior to the filing of the State Court Action. The confusion of the identity of the property to be conveyed was apparently shared by Defendant's counsel, who wrote "[t]he 'tree farm' is represented by one of those two deeds."

22. Plaintiffs, who are not sophisticated in the law, assumed that the two deeds represented the two tracts which comprised the Second Property, and thus the mutual mistake was not realized until after a settlement agreement had been executed by the Plaintiffs.

23. On September 28, 2018, a partially executed settlement agreement was shared by Plaintiffs' counsel with Defendant's counsel. A copy of that partially executed settlement agreement is attached as Exhibit G. The partially executed settlement agreement includes a mutual mistake of fact – specifically, that the Plaintiffs were capable of conveying the First Property to the Defendants. In fact, the Plaintiffs had been divested of title to the First Property for nearly 10 years before the State Court Action, and were incapable of conveying title to the Defendant.

24. On November 26, 2018, Plaintiffs' counsel emailed Defendant's counsel a copy of a tax statement to permit the Defendant to make appropriate payments and preserve the land from loss. Notably, the tax statement identifies only the Second Property, not the First Property. A copy of that tax statement is attached as Exhibit H. The

statement showed back taxes, which were the responsibility of the Plaintiffs, under the settlement agreement.

25. On December 3, 2018, a tax statement was again shared with Defendant's counsel. The statement showed a reduced balance reflecting the payment of back taxes by the Plaintiffs, pursuant to the settlement agreement. A copy of that tax statement is attached as Exhibit I.

26. On January 9, 2019, counsel participated in a telephone call. During that call, the mutual mistake of fact became apparent. Plaintiffs' counsel followed that call with an email, outlining the apparent confusion, and requesting that the Defendant's counsel share a revised settlement agreement to accurately reflect the real property to be conveyed. A copy of that email is attached as Exhibit J.

27. Since then, Plaintiffs have attempted to rectify the mutual mistake of fact contained in the settlement agreement, to no avail.

28. On September 23, 2019, Defendant's counsel shared a copy of the settlement agreement executed by the Defendant. The settlement agreement bore a date of January 28, 2019 – which is almost three weeks after the telephone call between the Parties' respective counsel which identified the mutual mistake of fact. A copy of that document is attached as Exhibit K.

29. Since then, Plaintiffs have renewed their efforts to rectify the mistake, to no avail.

30. Defendant takes the position that Plaintiffs must convey title to the First Property – to which they have not held title for more than twelve (12) years. On December 5, 2019, Defendant threatened to sue the Plaintiffs to enforce the mutual mistake of fact.

## Count One – Declaratory Judgment

31. Plaintiffs incorporate all prior paragraphs by reference, as if recited fully herein.

32. The Parties entered into an oral settlement agreement on August 31, 2017, in the presence of Magistrate Judge Schulze.

33. The Parties attempted to reduce that settlement agreement to writing, but the writing included a mutual mistake of fact – specifically – the identification of the real property to be conveyed by the Plaintiffs to the Defendant.

34. Plaintiffs contend the agreement obligates them to convey the Second Property – the only property they own in Georgia.

35. Defendants contend the agreement obligates the Plaintiffs to convey the First Property and the Second Property, despite knowing that the Plaintiffs were divested of title to the First Property nearly ten (10) years prior to the filing of the State Court Action.

36. Defendant apparently executed a draft settlement agreement nearly three weeks after she knew of the mistake contained in the draft. Defendant inexplicably waited eight months to deliver that executed document.

37. An actual, justiciable controversy exists between the Parties regarding their rights, duties, and obligations under the August 31, 2017 settlement agreement which will be fully and finally resolved by an adjudication by this Court.

WHEREFORE, the Plaintiffs request that this Court issue an order declaring, decreeing, and adjudging that they are obligated to convey the Second Property to the Defendant, and that the Plaintiffs are not obligated to convey the First Property to the Defendant, and further that the Plaintiffs are not in material breach of the August 31, 2017 settlement agreement.

### **Count Two – Reformation**

38. Plaintiffs incorporate all prior paragraphs by reference, as if recited fully herein.

39. The Plaintiffs executed a draft settlement agreement that contained a mutual mistake of fact.

40. The mutual mistake of fact was identified by the attorneys for the Parties. Despite this identification, the Defendant executed the draft settlement agreement.

41. The draft settlement agreement bearing the Parties' signatures does not reflect the mutual intentions of the Parties on August 31, 2017, when the settlement agreement was reached.

WHEREFORE, the Plaintiffs request that this Court issue an order reforming the settlement agreement bearing the Parties' signature to reflect the Plaintiffs' obligation to convey the Second Property, only, to the Defendant.

### **Count Three – Breach of Contract**

42. Plaintiffs incorporate all prior paragraphs by reference, as if recited fully herein.

43. The Parties entered into a settlement agreement on August 31, 2017 which called for the Defendant to execute and deliver a release to the Plaintiffs.

44. Defendant has refused to execute and deliver such a release. In fact, Defendant continues to threaten legal action against Plaintiffs. Such (in)action constitutes a material breach of the agreement between the Parties.

45. As a direct and proximate result of the Defendant's material breach, the Plaintiffs have suffered damages including attorney's fees.

WHEREFORE, the Plaintiffs request that this Court enter judgment in their favor and against the Defendant, in an amount exceeding seventy-five thousand dollars ($75,000), including attorney's fees, prejudgment interest, and costs.

/s/  Thomas  C.  Valkenet,  Esq.
Thomas C. Valkenet (Md. Fed. Bar # 03968)
Young & Valkenet
600 Wyndhurst Avenue, Suite 230
Baltimore, Maryland 21210
(410) 323-0900
TCV@youngandvalkenet.com


/s/  Ian  T.  Valkenet,  Esq.
Ian T. Valkenet (Md. Fed. Bar # 30112)
Young & Valkenet
600 Wyndhurst Avenue, Suite 230
Baltimore, Maryland 21210
(410) 323-0900
ITV@youngandvalkenet.com


Attorneys for the Plaintiffs, Robert Tedeschi and Rebecca Tedeschi